# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:12cr00044-004 |
| ) | **REPORT AND** |
| WILLIAM F. ADAMS, et al., ) | **RECOMMENDATION** |
|     Defendants ) | |

This matter is before the court on the defendant Michael W. Dunlap's Motion To Dismiss Counts 51-74 Of Superseding Indictment, (Docket Item No. 91), ("Motion"). The Motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was held before the undersigned on November 19, 2012. For the reasons set forth below, I recommend that the court deny the Motion.

*I. Facts*

Dunlap and four others are charged in a Superseding Indictment, (Docket Item No. 51), with conspiring to structure currency transactions to avoid bank reporting requirements, to transport in interstate commerce money of the value of $5,000.00 or more knowing it to have been taken by fraud and to commit wire fraud. While an understanding of the full scope of the conspiracy as alleged is not crucial to the court's decision on the Motion, it is important to note Dunlap's alleged role. The Superseding Indictment alleges that Dunlap was responsible for making purchasing decisions for certain mine operators and that he entered into an agreement with co-defendant J.D. "Dot" McReynolds to purchase mine supplies

-1-

and equipment from E&J Mine Supply at inflated prices in exchange for McReynolds's payment to him of "kickbacks."

Dunlap also is charged in Counts 51-74 of the Superseding Indictment with 24 counts of transportation in interstate commerce of securities and money of the value of $5,000.00 or more, knowing them to have been taken by fraud. These 24 counts allege that on 24 separate specific occasions from October 25, 2007, to June 25, 2009, Dunlap "had the mine operator make its purchases from E&J Mine Supply because Dunlap was fraudulently receiving 'kickbacks' in the form of cash payments from J. D. 'Dot' McReynolds." The Superseding Indictment further alleges: "The amounts paid to E&J Mine Supply by the mine operator were fraudulently obtained because they were procured through fraudulent 'kickbacks.'" The amounts of these payments listed in these counts of the Superseding Indictment vary from a low of $5,400.00 to a high of $19,295.00. None of the payments listed are below $5,000.00.

## *II. Analysis*

Title 18 U.S.C. § 2314 states:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; …
> Shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C.A. § 2314 (West 2000). The parties agree that each count of violating § 2314 must allege a separate transaction involving more than $5,000.00. *See United*

*States v. Grenagle*, 588 F.2d 87, 88 (4th Cir. 1978) ("Section 2314 has a jurisdictional amount requirement. The value of the transported stolen goods must be more that $5,000.")

Dunlap argues that Counts 51-74 of the Superseding Indictment should be dismissed because, while the amount of each payment alleged is greater than $5,000.00, the amount "taken by fraud" is much less and fails to meet the jurisdictional amount requirement. In particular, Dunlap argues that these counts should be dismissed, assuming the truth of the Government's allegations, because the "kickback" he received for each of the listed payments was less than $5,000.00. The Government argues that the jurisdictional amount is properly alleged in each count, in that, while Dunlap may not have received the entire amount of each payment as the proceeds of the scheme, the entire payment was procured by fraud.

Neither party has provided the court with any case law directly on point. I start the court's analysis with the language of the Stolen Property Act itself. *See* 18 U.S.C.A. § 2311 *et seq.* (West 2000 & Supp. 2012). Section 2311 defines "value" for purposes of the Stolen Property Act as:

> … the face, par, or market value, whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof.

18 U.S.C.A. §2311 (West Supp. 2012). The things alleged to have been transported in interstate commerce in these counts are payments. Thus, the value of the payments, whether made in cash or through check or other instrument, *see* 18 U.S.C.A. § 2311 (definition of "securities"), would be their face value. Furthermore, the Superseding Indictment alleges that these payments were

"fraudulently obtained because they were procured through fraudulent 'kickbacks.'" As Judge K. K. Hall of the Fourth Circuit pointed out in *United States v. Grainger*, 701 F.2d 308, 311 (4th Cir. 1983), "fraud is a broad term, which includes false representations, dishonesty, and deceit." Also, "fraud comprises all acts, conduct, omissions and concealment involving breach of a legal or equitable duty and resulting in damage to another." *Isaacs v. United States*, 301 F.2d 706, 713 (8th Cir. 1962). To prove that money was taken by fraud under the Act requires no more than showing that "money was 'taken from its owner through misrepresentation or deceit." *United States v. Cardall*, 885 F.2d 656, 673 (10th Cir. 1989). *See also United States v. Wright*, 791 F.2d 133, 135 (10th Cir. 1986) (§2314 applies to knowing interstate transportation of the fruits of a fraudulent act).

The Superseding Indictment in this case alleges that the entirety of each of the payments listed as the bases for Counts 51-74 were obtained by fraud. That being the case, I find that the Superseding Indictment on its face sufficiently alleges the jurisdictional amount requirement. Dunlap, however, further argues that the Government should be limited to pleading and proving only the amount of loss suffered by the mine operator victim in each of these transactions as the amount "taken by fraud." I can find no case law that so narrowly construes this statute. Therefore, I recommend that the court deny the Motion.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Counts 51-74 of the Superseding Indictment adequately plead the $5,000.00 jurisdictional amount requirement for violations of 18 U.S.C. §2314;

2. The court should deny the Motion insofar as it seeks to dismiss Counts 51-74 of the Superseding Indictment; and

3. The court should deny the Motion insofar as it seeks to suppress evidence of the entire amount of any payments obtained by fraud as alleged in Counts 51-74.

## RECOMMENDED DISPOSITION

For the reasoning set out above, the undersigned recommends that this court deny the Motion.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further

evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations could waive appellate review.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

ENTER: November 20, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE